IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
RONALD DAVID DRIGGERS,           )
                                 )
            Plaintiff,           )
                                 )
      v.                         )    1:06CV01078
                                 )
MICHAEL J. ASTRUE,               )
Commissioner of Social Security, )
                                 )
            Defendant.           )
```

**MEMORANDUM OPINION AND RECOMMENDATION
OF MAGISTRATE JUDGE ELIASON**

Plaintiff seeks judicial review pursuant to 42 U.S.C. Section 405(g) of the Commissioner's final decision denying his claims for Social Security disability insurance benefits and a period of disability. The Commissioner's denial decision became final on October 12, 2006, when the Appeals Council found no basis for review of the hearing decision of the Administrative Law Judge (ALJ). Plaintiff has filed a motion for judgment on the pleadings, Defendant has filed a motion for judgment on the pleadings, and the administrative record has been certified to the Court for review.

**The Plaintiff**

Plaintiff was 46 years old as of December 31, 2001, his date last insured ("DLI"). According to the ALJ, Plaintiff has a "limited (ninth grade) education" and past relevant work experience as a general maintenance worker and truck driver. (Tr. at 21.) Plaintiff alleged disability as of August 1, 1996, due to multi-level degenerative disc disease ("DDD"), depression, and stress.

**Plaintiff's Issues**

Plaintiff has presented several issues to the Court for review. Initially, he claims that the ALJ erred in not giving controlling weight to the opinion of his treating physician that Plaintiff was disabled at least since August 1997. Next, he contends that the ALJ erred in relying upon the "grids" instead of calling upon a vocational expert at step 5 of the sequential evaluation. Third, Plaintiff complains that the ALJ erred in that he failed to perform a function-by-function assessment of Plaintiff's residual functional capacity (RFC). Finally, he argues that the ALJ erred in formulating Plaintiff's RFC as there was no medical opinion in the record upon which to base it, and the record evidence does not support it.

**Discussion**

In reaching a decision on Plaintiff's claim, the ALJ followed the five-step analysis set out in the Commissioner's regulations. See 20 C.F.R. § 404.1520. Under the regulations, the ALJ is to consider whether a claimant (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Id. The burden of persuasion is on the claimant through the fourth step. See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). If the claimant reaches the fifth step, the burden shifts to the Commissioner to produce evidence that

other jobs exist in the national economy that the claimant can perform considering his age, education and work experience. Id.

The ALJ first found that Plaintiff had not engaged in substantial gainful activity during the relevant period. He next found that Plaintiff suffered from the severe impairment of DDD with low back pain and radiation. The ALJ decided that Plaintiff's severe impairment did not meet or medically equal the requirements of any listing in Appendix 1, Subpart P, Regulation Number 4.

Based on a finding that Plaintiff had the residual functional capacity (RFC) to perform "light" work, the ALJ concluded that Plaintiff could not return to his past relevant employment. However, relying on the Medical-Vocational Guidelines of Appendix 2 of Subpart P of the Regulations (hereinafter, the "grids"), he found that Plaintiff could perform jobs which existed in significant numbers in the national economy. Accordingly, the ALJ ruled that Plaintiff was not disabled within the meaning of the Social Security Act.

The scope of review by this Court of the Commissioner's decision denying benefits is limited. Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). The Court must review the entire record to determine whether the Commissioner has applied the correct legal standards and whether the Commissioner's findings are supported by substantial evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Where this is so, the Commissioner's findings are conclusive. The Court may not reweigh conflicting evidence that is substantial in nature and may not try the case de novo. Id. The

Court may not make credibility determinations, or substitute its judgment for that of the ALJ's. Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). "Substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed. 2d 842 (1971) (citation omitted), or evidence which "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted).

**Issue One**

Plaintiff's first issue for review is whether the ALJ erred in failing to give controlling weight to the opinion of Dr. Anthony Hucks-Folliss that Plaintiff's "disability probably dates back prior to 8/12/97." (Tr. at 216.) It is for the ALJ and not the Court to assess the weight to be given medical opinions. The non-exclusive list of factors to be used includes (1) whether the opinion is based on an examination, (2) the treatment relationship between plaintiff and the physician, (3) whether any evidence supports the opinion, (4) the consistency of the opinion with other opinions and the evidence, and (5) whether the physician is a specialist. Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005).

The ALJ is not bound by the opinion expressed by a treating physician. However, *to the extent that the treating physician's opinion is based on continuous observation*, that opinion is

-4-

entitled to great weight. But, the ALJ should not make a decision simply on the number of opinions expressed by treating physicians or specialists. Sterling Smokeless Coal Co. v. Akers, 131 F.3d 438 (4th Cir. 1997).

There is no rule that a non-examining physician's opinion is entitled to less weight than a treating physician's opinion. In all events, both opinions must be consistent with medical findings and other evidence in the record. Grizzle v. Pickands Mather & Co./Chisolm Mines, 994 F.2d 1093 (4th Cir. 1993), rev'd on other grounds by Director, OWCP v. Greenwich Collieries, 512 U.S. 267, 281 (1994). Thus, a non-treating physician's opinion may be accorded significant weight when it is based on the medical records, is supported by objective medical evidence, and is consistent with other medical opinions. Johnson, 434 F.3d at 657.

Although the opinions of treating physicians may be given controlling weight in making a determination of disability, they will not be given such weight if not supported by medically acceptable clinical and laboratory techniques or if they are not consistent with other substantial evidence in the record. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Opinions finding medical problems may be discounted when supported by questionable tests, or are conclusory or based on scant supporting evidence. Johnson, 434 F.3d at 657.

Opinions of physicians may also be discounted when they are made well after the physicians' last treatment. Mastro v. Apfel, 270 F.3d 171, 179 (4th Cir. 2001) (one year delay). Furthermore,

-5-

gaps in the medical record or a record disclosing a "hodgepodge of medical observations and treatments" serve as reasons to find no disability.  Id. at 179 (chronic fatigue syndrome).  Finally, opinions by physicians regarding the ultimate issue of whether a plaintiff is disabled within the meaning of the Social Security Act are not given controlling weight because the decision on that issue is reserved for the Commissioner alone.  20 C.F.R. § 404.1527(e).

The first issue raised by the foregoing discussion is Dr. Hucks-Folliss's status as Plaintiff's "treating physician." Plaintiff's medical records reveal that Plaintiff saw this doctor, between his alleged onset of disability (AOD) and his DLI (the "relevant period"), on only two occasions:  August 12 and August 28, 1997.  (See Tr. at 163-66.)  As the weight to be afforded a treating physician's opinion is based on the longevity of the relationship, e.g., 20 C.F.R. § 404.1527(d)(2); Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986), Dr. Hucks-Folliss's opinion is not entitled to controlling weight.

Further, contrary to Plaintiff's assertions and as discussed by the ALJ (see Tr. at 18-19), the doctor's opinion was neither well-supported by nor consistent with the record during the relevant period.  A November 1994 x-ray showed findings consistent with a central herniated nucleus pulposus at L5-S1 and DDD at L4-5. (Tr. at 193.)  Plaintiff, however, reported that he continued to work until August 1996.  (Tr. at 95.)

In August 1997, a year after his AOD, Plaintiff went to see Dr. Hucks-Folliss for low back pain, which he claimed had not

-6-

caused him to miss work.[1]  (See Tr. at 166.)  The doctor had
Plaintiff undergo magnetic resonance imagery ("MRI"), which
revealed a broad-based right-sided and far lateral disc at L5-S1,
as well as multi-level DDD.  (Tr. at 169.)  As noted by the ALJ,
Plaintiff did not seek further medical care until January 1999,
when he consulted Dr. Bradford Faulkenberry with regard to right
knee pain.  (See Tr. at 181.)  Plaintiff told Dr. Faulkenberry that
he spent a lot of work time on his knees, and the doctor opined
that this may have aggravated Plaintiff's knee.[2]  His past lumbar
problems were noted, but were not the focus of the visit.  Id.

Plaintiff did not see a doctor again for two years, at which
time he went to Dr. Faulkenberry with upper respiratory symptoms.
(See Tr. at 180.)  Although Plaintiff saw Dr. Faulkenberry two
additional times before his DLI (see Tr. at 178-79), at neither
visit did he complain of low back pain or related symptoms.  There
are no other medical records from the relevant period other than a
July 1999 emergency room visit for a right upper extremity
laceration.

Clearly, Plaintiff's medical records do not support the
allegation of a disabling impairment prior to his AOD.  Further,
the indications that Plaintiff actually worked during this time
contradicts Plaintiff's disability claim.  The Commissioner also

---

[1]Plaintiff added that he was not then working because he had been fired.  (Tr. at 166.)

[2]Plaintiff also told a consultative examiner that, after leaving his past relevant employment, "[h]e had been working for himself."  (Tr. at 209.)

-7-

points out that Dr. Hucks-Folliss relied on a 2004 x-ray which is beyond the DLI. He adds that while retrospective opinions are entitled to some weight in some circumstances, with the lack of contemporary evidence here, this is not such a situation. Moreover, as Plaintiff himself points out (Pl.'s Br. at 7) in stating that his only role was to get Plaintiff disability, Dr. Hucks-Folliss misapprehended his role and his opinion may be discounted for that reason. Lastly, because Dr. Hucks-Folliss's opinion addresses a determination reserved to the Commissioner, it could never be entitled to controlling weight. See 20 C.F.R. § 404.1527(e). Thus, the Court finds no error in the ALJ's rejection of this opinion.[3]

**Issue Two**

The second issue raised by Plaintiff is that, at step 5 of the sequential evaluation, the ALJ allegedly erred by relying on the grids instead of calling upon a vocational expert, as Plaintiff suffers from the nonexertional impairment of pain. At step five, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). To improve both the uniformity and efficiency of this

---

[3] Because the Court finds substantial evidence to support the ALJ's decision regarding the physician's opinion, the further objections that Plaintiff advances with respect thereto are of no moment.

-8-

determination, the Commissioner promulgated the grids.[4] Heckler v. Campbell, 461 U.S. 458, 461 (1983). If the claimant has no nonexertional impairments that prevent him from performing the full range of work at a given exertional level, the Commissioner may rely solely on the grids to satisfy his burden of proof. Coffman v. Bowen, 829 F.2d 514, 518 (4th Cir. 1987); Gory v. Schweiker, 712 F.2d 929, 930-31 (4th Cir. 1983).

In the case, however, where a claimant suffers from both exertional and nonexertional limitations, the grids "are not conclusive but may only serve as guidelines." Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989) (citing Wilson v. Heckler, 743 F.2d 218 (4th Cir. 1984)). See also 20 C.F.R. § 404.1569a(d). In such a case, the Commissioner must prove through vocational expertise that jobs exist in the national economy which the claimant can perform. Walker, 889 F.2d at 49-50.

A non-exertional limitation is one that places limitations on functioning or restricts an individual from performing a full range of work in a particular category. Gory, 712 F.2d at 930. But "not every nonexertional limitation or malady rises to the level of a

---

[4]The grids

> consist of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and set forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. Where a claimant's qualifications correspond to the job requirements identified by a rule, the guidelines direct a conclusion as to whether work exists that the claimant could perform. If such work exists, the claimant is not considered disabled.

Heckler v. Campbell, 461 U.S. 458, 461-62 (1983) (footnotes omitted).

-9-

nonexertional impairment, so as to preclude reliance on the grids. The proper inquiry . . . is whether the nonexertional condition affects an individual's [RFC] to perform work of which he is exertionally capable." Walker, 889 F.2d at 49 (citing Grant v. Schweiker, 699 F.2d 189 (4th Cir. 1983)).

Plaintiff carries the burden through the first four steps of the sequential evaluation, and thus must establish his RFC, which is assessed prior to step 4. See 20 C.F.R. § 404.1520(e); Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005). In the instant case, Plaintiff assumes that the ALJ found Plaintiff suffered from significant pain. However, the ALJ determined that Plaintiff failed to show that he suffered from pain during the relevant period that would restrict his RFC beyond the "light"[5] level which the ALJ found.

The ALJ is required to make credibility determinations about allegations of pain or other nonexertional disabilities. See Hammond v. Heckler, 765 F.2d 424, 426 (4th Cir. 1985). Under the regulations, the evaluation of a claimant's pain or other symptoms is a two-step process. Craig v. Chater, 76 F.3d 585, 585 (4th Cir. 1996). First, there must be objective medical evidence showing the existence of a medical condition or impairment which results from anatomical, physiological, or psychological abnormalities and which

---

[5] "The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing[.]" Social Security Ruling 83-10, 1983-1991 Soc. Sec. Rep. Serv. 24, 29 (West 1992).

could reasonably be expected to produce the pain or other symptoms alleged. Id. at 594. This does not mean just any pain or some pain, but rather the pain from which the plaintiff alleges he or she suffers. Id. Second, and only after the claimant has met the threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, the Commissioner must determine the intensity and persistence of the claimant's pain, and the extent to which it affects the ability to work. Id. at 595. In making this determination, the ALJ may consider the presence or lack of objective evidence of pain, inconsistencies in the evidence, and statements by the plaintiff and physicians, in short, all relevant evidence in making an evaluation of the credibility of the plaintiff's subjective complaints of pain. Id. at 595-96.

Subjective allegations of severe pain may be discounted when not supported by objective medical evidence and/or supporting medical opinions are made without any testing. Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005). The failure to seek help also constitutes a reason for discounting subjective claims. Id. Finally, the ALJ may discount subjective complaints of pain based on credibility determinations, including evasive, unclear or exaggerating testimony by the plaintiff, or at odds with the plaintiff's routine activities. Id.

The ALJ determined that Plaintiff's DDD could be expected to produce his alleged symptoms, but that Plaintiff's statements about the severity of his pain were not entirely credible. As discussed

-11-

above, Plaintiff's medical records simply do not support the level of pain he now claims he experienced during the relevant period. The ALJ specifically cited Plaintiff's "lack of consistent treatment for alleged disabling pain" (Tr. at 19) as a basis for his credibility finding. See Johnson, 434 F.3d at 658; Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994) (an "unexplained inconsistency" between claimant's characterization of her condition's severity and the treatment sought is "highly probative" of her credibility) (citations omitted). The ALJ further referred to inconsistencies between Plaintiff's testimony and that of his wife. (Tr. at 19-20.) See Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34486 (a strong indication of credibility is the consistency, both internally and with other information in the case record, of the claimant's statements). Plaintiff has not challenged the ALJ's credibility determination, which the Court finds to be supported by substantial evidence.

The Walker inquiry is whether a nonexertional condition – in this case, Plaintiff's pain from his DDD – affects his RFC to perform work of which the ALJ found he is exertionally capable, i.e., light work. As Plaintiff has failed to carry his burden of showing that, during the relevant period, he suffered from such pain as to preclude the performance of light work, the court does not find that the ALJ committed legal error in relying upon the grids.

**Issue Three**

Plaintiff's next issue concerns the function-by-function assessment described in 20 C.F.R. Section 404.1545. Ruling 96-8p, 61 Fed. Reg. 34474-01, sets forth the Administration's policies and policy interpretations for the assessment of RFC for disability claimants. Id. at 34474. "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis[.]" Id. at 34475. The Ruling explains that the assessment "must address both the remaining exertional and nonexertional capacities of the individual." Id. at 34477.

Plaintiff appears to be arguing that the Ruling requires the ALJ to separately articulate in his opinion an assessment of Plaintiff's ability to sit, stand, and walk, but there is a distinction here between what the ALJ must *consider* and what he must *articulate* in the decision. Ruling 96-8p contains a section entitled "Narrative Discussion Requirements" which details what an ALJ is required to articulate regarding a claimant's RFC. See id. at 34478. The section does *not* require an ALJ to discuss all of a claimant's abilities on a function-by-function basis but, rather, only to "describe the maximum amount of each work-related activity the individual can perform *based on the evidence available in the case record.*" Id. (footnote omitted; emphasis added).

In his discussion of Plaintiff's medical records from the relevant period, the ALJ noted that Plaintiff complained of numbness in his legs and feet. (Tr. at 17; see also Tr. at 165.)

-13-

But Dr. Hucks-Folliss observed that Plaintiff had leg pain complaints even in November 1994, yet had missed no work and was not undergoing any treatment. (Tr. at 166.) The doctor described Plaintiff's physical examination as "[e]ssentially negative."[6] (Id.) The ALJ also discussed Plaintiff's post-relevant period allegations as to his difficulty with sitting, standing and walking, but largely dismissed them as less than credible. (Tr. at 19-20.)

Additionally, the ALJ noted that as late as August 2004, Plaintiff was able to rise from sitting to standing without difficulty and his gait was normal. (Tr. at 19; see also Tr. at 204.) The examining physician, Dr. Bill Edwards, found that Plaintiff's motor strength was 5/5, and his reflexes 2+ and symmetric. Plaintiff had no dermatomal paresthesias and exhibited no sciatic stretch signs. Upon follow-up, Dr. Edwards even warned Plaintiff to avoid "very sedentary activities." (Tr. at 208.) In February 2005, Plaintiff had no radiculopathy and no focal neurologic deficits. (Tr. at 19; see also Tr. at 207.)

Again, Plaintiff's medical records from the relevant period are inadequate to require a finding of more limitations or restrictions with regard to his ability to sit, stand, and walk. The Court finds that the ALJ's analysis supports his conclusion that Plaintiff can perform "light" work, which term encompasses

---

[6] The ALJ next refers to a medical record that he attributes to Dr. Faulkenberry with a date of 1997 (see Tr. at 18), but this record appears to be from Matthew Manzo, D.O., and dated 1992 (see Tr. at 182), thus preceding the relevant period.

-14-

these abilities; hence, the ALJ committed no reversible error in not specifically addressing them.

**Issue Four**

Plaintiff contends that the ALJ improperly formulated his RFC because the ALJ did not even rely on the finding of the nonexamining state expert. The ALJ is obliged by regulation to consider every medical opinion it receives, regardless of the source. 20 C.F.R. § 404.1527(d). The state agency consultants and program physicians and psychologists are experts in Administration disability programs, and the regulations require factfinders to consider their findings of fact. SSR 96-6p, 61 Fed. Reg. 34466-01, 34467 (citing 20 C.F.R. §§ 404.1527(f) and 416.927(f)). Ruling 96-6p also provides that "[i]n appropriate circumstances," the opinions of state consultants may be entitled to greater weight than that of a treating physician, such as when the state consultant's opinion "is based on a review of a complete case record." Id. at 34468. And the Fourth Circuit Court of Appeals has held that a non-treating physician's opinion may be accorded significant weight when it is based on the medical records, is supported by objective medical evidence, and is consistent with other medical opinions. Johnson, 434 F.3d at 657. See also Kyle v. Cohen, 449 F.2d 489, 492 (4th Cir. 1971) (the testimony of a non-examining physician can be relied upon when it is consistent with the record).

Plaintiff's Brief refers to a "Request for Medical Severity" completed by an agency consultant.[7] This expert concluded, based on Plaintiff's admittedly sparse records for the relevant period, that there was "insufficient evidence to properly evaluate" Plaintiff's condition. (Tr. at 161.) Plaintiff claims this means there was no medical opinion concerning Plaintiff's RFC. This, however, ignores the fact that the physician assessed Plaintiff's RFC at medium, explaining that it was "[t]he most we could rate [with] this information." (Id.)

Moreover, it appears that another state agency consultant may have rendered an RFC assessment in Plaintiff's case. He noted that he reviewed not only Plaintiff's August 1997 MRI, but also Plaintiff's 2004 medical records which are more numerous. (Tr. at 160.) The expert found that Plaintiff had an RFC for "medium" work, noting that Plaintiff had had no surgery.

Thus, Plaintiff appears to be mistaken in contending there was no medical RFC opinions. There appear to be two RFC opinions, each based on Plaintiff's medical records. And, it is for the ALJ and not the Court to assess the weight to be given such opinions, see Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). Further, the fact that a second expert deemed Plaintiff's submission "insufficient" upon which to "properly" assess RFC is not the Commissioner's error, but rather Plaintiff's responsibility because

---

[7] Although the consultant who completed the RFC form did not print his name, his signature is markedly different from that of the consultant who completed the medical severity request. (Compare Tr. at 160 to Tr. at 161.)

-16-

he bears the burden of producing medical evidence about his condition. See 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987) (claimant bears the burden because he is "in a better position to provide information about his own medical condition"); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981) (claimant bears the burden of establishing a prima facie entitlement to benefits). Accordingly, the Court finds no reversible error in the ALJ's RFC finding.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's motion for judgment on the pleadings (docket no. 18) be denied, that Defendant's motion for judgment on the pleadings (docket no. 21) be granted, and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

June 23, 2008